PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JAMES FOLDS,                                )
                                            )
                Plaintiff,                  )       CASE NO. 4:15-CV-00354
                                            )
        v.                                  )
                                            )       JUDGE BENITA Y. PEARSON
                                            )
LIBERTY LIFE ASSURANCE COMPANY              )
OF BOSTON,                                  )
                                            )       **MEMORANDUM OF OPINION AND**
                Defendant.                  )       **ORDER** [Resolving ECF Nos. 15 and 16]


Plaintiff James Folds commenced this action under the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., against Defendant Liberty Life

Assurance Company of Boston.  Folds challenges the administrator's decision to terminate his

long-term disability benefits.  The following motions are pending before the Court: (1) Plaintiff's

Motion for Judgment on the Administrative Record (ECF No. 15); (2) Defendant's Motion for

Judgment on the Administrative Record (ECF No. 16) and (3) Defendant's Motion to Strike

Plaintiff's Exhibit A Notice of Decision (attached to Plaintiff's Brief at ECF No. 15 at PageID #:

930-41).[1]

The Court has reviewed the parties' merits briefs, responses, administrative record, and

governing law.  For the reasons that follow, the Court denies Plaintiff's motion for judgment on

the administrative record; grants Defendant's motion for judgment on the administrative record;

---

[1] Defendant's Motion to Strike is embedded within its Motion for Judgment on the
Administrative Record, ECF No. 16 at PageID #: 953-54.

(4:15cv0354)

and Defendant's motion to strike.  Defendant's request for a refund of $25,531.30 is denied.

## I.  Background

During all relevant times, Plaintiff James Folds was employed by Parker Hannifin Corporation ("Parker Hannifin") as a Technical Support Services Specialist.  ECF No. 13 at PageID #: 580, 476-77 (A.R. 489, 385-86).  Technical Support Services Specialist is considered to be a light strength occupation (*Id.* at PageID #: 505 (A.R. 414)) that requires Plaintiff to: sit at a workstation with a computer and phone; talk with customers; perform inside sales; and review designs for insulated tubing used in power plants and on oil rigs.  *Id.* at PageID #: 174, 537 (A.R. 83, 466).

As a Parker Hannifin employee, Plaintiff participated in the company's employee welfare benefit plan, a component of which is the Parker Hannifin Long-Term Disability Program ("the Plan"), insured under the group policy issued by Defendant, Liberty Life Assurance Company of Boston ("Liberty Life").  ECF No. 15 at PageID #: 942.  *See also* ECF No. 13  at PageID #: 1-67 (A.R. 1-67).  The Plan provides a monthly benefit when a participant experiences a qualifying disability and the claims administrator determines the employee is eligible for benefits.  *Id.* at Page ID#: 28 (A.R. 28).  The Program defines qualifying disability as follows:

> **Qualifying Disability**
> During the first two years after you qualify for [long-term disability] benefits, you are considered to have a qualifying disability if your medical condition prevents you from performing the essential functions of your occupation, even with job accommodations Parker makes for you. This means you are unable to perform the functions normally required of your occupation in the national economy.

*Id.*

2

(4:15cv0354)

The Plan is "self-funded through the general assets of Parker [Hannifin]" (ECF No. 13 at PageID #: 154 (A.R. 63)) and identifies Defendant as the Claims Administrator "responsible for processing claims and determining the amount of the [long-term disability] benefit in accordance with Plan terms."  *Id.* at PageID #: 150 (A.R. 59).  Defendant is also the Claims Fiduciary vested with "final discretionary authority for determining claims under the Plan" including "claims for benefits and appeals of denied claims."  *Id.* at PageID #: 128, 150 (A.R. 37, 59).

An employee receiving benefits under the Plan is responsible for, among other things: (1) submitting "current medical documentation the claims administrator determines conclusively demonstrates [the employee's] inability to perform the essential functions of [the employee's] occupation;" and (2)  providing "periodic proof of [the employee's] continued disability when the claims administrator requests it."  Under the Plan, Defendant "may request current satisfactory proof from [the employee's] qualified medical provider of [the employee's] continuing disability."  *Id.* at PageID #: 128 (A.R. 37).  Additionally, employee's receiving benefits under the Plan must "timely respond[ ] to the claims administrator's requests for physical exams."  *Id.* at PageID #: 124 (A.R. 33).

### A.  Plaintiff's Claim for Long-Term Disability

Plaintiff's claim for long-term disability is premised on his Perianal Crohn's disease diagnosis and related symptoms.  ECF No. 15 at PageID #: 912.  Crohn's disease is a chronic disease that causes inflammation and irritation in the digestive tract.  Individuals living with

(4:15cv0354)

Crohn's disease are subject to spontaneous remission, prolonged asymptomatic intervals[2], and

intermittent exacerbations (also known as "flare-ups"[3]) that may result in chronic diarrhea with

abdominal pain, fever, anorexia, and weight loss.[4]

Plaintiff contends that he began experiencing the symptoms of Crohn's disease in 2010.

ECF. No. 15 at PageID #: 912.  Because of the disease, "he cannot sit for more than 10 minutes

at a time," and experiences "nausea, pain, cramping, anal bleeding, weight loss, and frequent

bathroom visits." *Id.*  As a result of these symptoms, Plaintiff  was "forced to stop working on

January 4, 2012." *Id.*

Plaintiff had several periods of short-term disability between January 9, 2012 and July 9,

2012.[5]  After Plaintiff completed the requisite six-month elimination period under the Plan,

---

[2] *Hale v. Colvin*, No. 3:13CV00182, 2014 WL 868124, at *6 (S.D. Ohio Mar. 5, 2014) ("Although spontaneous remission or medical therapy may result in a prolonged asymptomatic interval, established Crohn's disease is rarely cured but instead is characterized by intermittent exacerbations.") (citations omitted).

[3] *Id.* ("[T]hose with Crohn's disease often suffer symptoms that fluctuate in severity… from mild to severe, and can come and go with periods of flare-ups.") (citations omitted).

[4] *See Definition and Facts for Crohn's Disease*, Nat'l Inst. of Diabetes and Digestive and Kidney Diseases, https://www.niddk.nih.gov/health-information/health-topics/digestive-diseases/crohns-disease/Pages/definition-facts.aspx (last visited Sept. 26, 2016); The Merck Manual Professional Version, https://www.merckmanuals.com/professional/gastrointestinal-disorders/inflammatory-bowel-disease-ibd/crohn-disease (last visited Sept. 26, 2016).

[5] Prior to filing his long-term disability claim, plaintiff was off work on short-term disability due to his Crohn's disease during the following intermittent periods: January 5 – 20, 2012 (16 days); January 21 – 27, 2012 (7 days); January 28 – February 3, 2012 (3 days); March 1 – April 6, 2012 (37 days); April 7 – 13, 2012 (7 days); April 14 -15, 2012 (2 days); April 16 – May 20, 2012 (35 days); June 6 – July 1, 2012.  ECF No. 13 at Page ID#: 176 (A.R. 85).

(4:15cv0354)

Defendant awarded long-term disability benefits to Plaintiff beginning August 22, 2012 with a

disability date of January 9, 2012.  ECF No. 16 at PageID #: 944.

### B. Defendant's Review for Continued Eligibility

In June 2013, approximately ten months after Plaintiff began receiving long-term

disability benefits, Defendant reviewed Plaintiff's continued eligibility for the benefits.  *Id.* at

PageID #: 944.  In order to assess Plaintiff's continued eligibility, Defendant requested additional

documentation to support Plaintiff's claim.  *Id.*  Among the documentation requested, Defendant

sought medical information including office visit notes, diagnostic test results, and procedure

reports from Dr. Charles DeMario (Plaintiff's primary care physician), Dr. Bo Shen (Plaintiff's

treating gastroenterologist), and Rebecca Wainwright, Certified Nurse Practitioner.  *Id.*  In

addition, Defendant's consulting physician Dr. Ronald S. Green, Consulting Board Certified

Internal Medicine and Gastroenterology Physician, spoke with Plaintiff's treating

gastroenterologist Dr. Shen on June 19, 2013 (ECF No. 13 at PageID #: 592-601 (A.R. 501-10))

and nurse practitioner Ms. Wainwright on September 30, 2013.  ECF No. 16 at PageID #:

944-45.

After reviewing medical documentation from Plaintiff's other treating practitioners,

among other information in the Administrative Record, Dr. Green submitted a Memorandum to

Defendant on October 23, 2013 with his findings.  *See* ECF No. 13 at PageID #: 543-45, 592-97

(A.R. 452-54, 501-06).  Among his findings, Dr. Green noted that Plaintiff's last colonoscopy on

April 22, 2011 showed no active luminal disease.  *Id.*  Following the colonoscopy in April 2011,

Plaintiff had a subsequent flexible sigmoidoscopy procedure under anesthesia and surgeries for

5

(4:15cv0354)

persistent transsphincteric fistulae with Seton placement and debridement, as well as local steroid injection at the site of a painful anal ulcer in May 2012. ECF No. 13 at PageID #: 543-45, 592-97 (A.R. 452-54, 501-506). Plaintiff's last surgical intervention with Dr. Stocchi was in May 2012. Id. Plaintiff also had three Seton's in place and his last MRI in August 2012 revealed a mild increase in soft tissue enhancement along the left gluteal cleft but no new fistulae and no abscesses. Id. In addition, Dr. Green found that Plaintiff's August 2012 MRI revealed no significant inflammation, abscess, or new fistulae that may have been responsible for the pain, and that Defendant received no reports of repeat studies since that time. Id.

Dr. Green also found that Plaintiff had not complied with therapy and had gone extended periods of time between Remicade anti-biotic infusions (e.g., eighteen weeks between September 2012 and January 2013, sixteen weeks between January 2013 and May 2013, and twelve weeks between May 2013 and August 2013). Id. Additionally, Dr. Green found that Plaintiff was last examined by his treating gastroenterologist, Dr. Shen, in August 2012, and he was last seen by his nurse, Ms. Wainwright, in April 2013. Id. According to Plaintiff's medical records, Dr. Green noted that when Plaintiff visited with Ms. Wainwright in April 2013, he reported no fecal urgency or abdominal pain, and laboratory studies and inflammatory markers were normal. Id. Dr. Green also noted the information he received during his discussion with Dr. Shen. According to Dr. Shen, Plaintiff continued to self-report perianal pain and an inability to sit, but there was no evidence of active luminal disease in the prior two years. Id. Lastly, Dr. Green found that during a September 11, 2013, follow-up visit with his primary care physician, Dr. DeMario, Plaintiff continued to self-report persistent perianal pain limiting his capacity to sit and

(4:15cv0354)

walk but Dr. DeMarios treatment notes indicated that there was no anorectal examination, objective testing, or discussion of Plaintiff's anorectal symptoms.  ECF No. 13 at PageID #: 543-45, 592-97 (A.R. 452-54, 501-06)

As a result of Dr. Green's review of Plaintiff's medical records and information, Defendant determined that Plaintiff was no longer eligible to receive long-term disability benefits under the Plan.  Defendant terminated Plaintiff's benefits on grounds that there was no medical documentation to support an inability to perform the essential functions of Plaintiff's Technical Support Service Specialist job beyond October 16, 2013.  ECF No. 16 at PageID #: 947.

### C.  Plaintiff's First-Level Appeal

On April 9, 2014, Plaintiff submitted a request for an appeal.  ECF No. 13 at PageID #: 315-513 (A.R. 224-422).  Plaintiff included with his appeal request the following additional records: Cleveland Clinic Foundation records (January 30, 2014, December 4, 2013), Parker Hannifin's job description, Newton Falls Clinic Records (October 9, 2013 through December 4, 2013), Vocational Assessment of Residual Employability (March 9, 2014), Statement from Dr. DeMario (March 17, 2014), and medical records from Dr. DeMario (December 31, 2013 through January 30, 2014).  *Id.* at PageID #: 315 (A.R. 224).  Defendant assigned Plaintiff's claim to Dr. Steven Tawil for First-Level Appeal review.  Dr. Tawil is an independent physician Board Certified in Internal Medicine with a Subspecialty Certificate in Gastroenterology.  ECF No. 16 at PageID #: 948.  In addition to reviewing all of the additional documentation submitted, Dr. Tawil spoke with Plaintiff's primary care physician Dr. DeMario by telephone on July 9, 2014. *Id.*

7

(4:15cv0354)

Based on Plaintiff's clinical information and telephonic consultation with Dr. DeMario,

Dr. Tawil found:

> There are no restrictions or limitations from gastrointestinal illness, Crohn's disease, from October 2013 and forward. The patient had a prior perirectal fistula treated with Seton placement in the past. From October 2013 and forward there was no requirement for antibiotics, no surgery, no hospitalization, no emergency room visits. The repeat colonoscopy and EGD in January 2014 showed no evidence of active inflammation, no pathologic change by biopsy. From 2012 and forward the patient has gained more than 50 pounds. The CBC and basic metabolic panel, and inflammatory markers are normal.
>
> The most recent MRI enterography of the small bowel and colon showed normal small bowel, normal colon, and no evidence of inflammation in the perineum. The physical exams are consistently normal, with no described physical limitations.
>
> Since the progress notes for October 2013 and forward show an increasing weight, no weight loss, good appetite, no hospitalization, no emergency room visits, no gastrointestinal bleeding, no fistula, no abscess, no stricture, no significant colonic or small bowel inflammation, no requirement for escalating dosage of narcotics, no requirement for advancement of the Crohn's disease medications, no need for steroids, there are no identifiable restrictions or limitations from gastrointestinal illness for October 2013 and forward. A progressive weight gain, a normal CBC, a normal CRP, a normal MRI enterography, a normal pelvis on MRI with no active fistula or inflammation, a normal colonoscopy with biopsy, a normal EGD with biopsy, are not consistent with a need for any restrictions or limitations from Crohn's disease. The claimant's personal attending physician gastroenterologist concurred with the opinion of this review during our telephonic consultation. There is no objective data to support any R/L's for October 2013 and forward from gastrointestinal illness. Based on the clinical information, and telephonic consultation, the claimant would be able to sustain full-time work without any identifiable restrictions or limitations. . . .
>
> There is at most mild Crohn's disease which is currently inactive. Lab data, colonoscopy and biopsy data, imaging data, have all recently been normal.

8

(4:15cv0354)

ECF No. 13 at PageID #: 306-07 (A.R. 215-16).

As a result of Dr. Tawil's review, Defendant determined there were no physical exam findings, diagnostic test results, or other forms of objective medical evidence supporting restrictions or limitations that would prevent Plaintiff from performing the duties of his job. ECF No. 16 at PageID #: 950. Consequently, Defendant upheld the original determination to terminate benefits beyond October 16, 2013. Id.

**D. Dr. DeMario's Letter**

On August 20, 2014, after Plaintiff's First-Level Appeal had been decided, Defendant received a letter dated August 18, 2014 from Plaintiff's primary care physician Dr. DeMario. ECF No. 13 at PageID #: 286-87 (A.R. 195-96). In his letter, Dr. DeMario disagreed with Dr. Tawil's findings. Id. at PageID #: 286 (A.R. 195). In the letter, Dr. DeMario described Plaintiff's Crohn's disease symptoms as follows:

> [Plaintiff] has been suffering from Rectal Crohns disease with perianal fistulas. To help control the severe rectal pain stents have been placed in the existing fistulas. Frequent bowel movements irritate the area and the situation; this makes it very difficult for [Plaintiff] to sit and motions such as bending over and lifting result in severe pain. These symptoms are more or less constant but exacerbations of the symptoms occur a few times a week with more severe symptoms usually occurring about once a month. [Plaintiff] routinely has bowel movements approximately 20-30 minutes, with the first bowel movement of the day he will have nausea and vomiting.

Id.

The letter also addressed errors in Dr. Tawil's reporting regarding Plaintiff's weight loss and certain other aspects of Plaintiff's treatment. Id. at PageID #: 287 (A.R. 196). In response, Defendant requested that Dr. Tawil complete an addendum review in order to respond to Dr.

9

(4:15cv0354)

DeMario's letter.  ECF No. 16 at PageID #: 950-51.  On August 28, 2014, Dr. Tawil completed

his review, corrected his errors, and affirmed that his conclusions remained the same.  *Id.* at

PageID #: 951.

### E.  Plaintiff's Second-Level Appeal

On August 29, 2014, Plaintiff submitted his second letter of appeal, along with copies of

Dr. DeMario's medical records dated February 27, 2014 through August 20, 2014.  ECF No. 13

at PageID #: 251 (A.R. 160).  Defendant referred Plaintiff's appeal for clinical assessment and

review by Dr. Todd Eisner, an independent physician Board Certified in Internal Medicine with

additional certification in Gastroenterology, who had not previously been involved with

Plaintiff's claim.  ECF No. 16 at PageID #: 951.  In a report dated November 4, 2014, Dr. Eisner

concluded that there was no objective evidence of any functional impairment that resulted in

restrictions or limitations beyond October 16, 2013.  ECF No. 13 at PageID #: 203-09 (A.R.

112-18).  Among his reasons for reaching this conclusion, Dr. Eisner explained:

> [Plaintiff's] CBC and CRP lab tests have been normal, and a
> colonoscopy and EGD in January 2014 showed no evidence of active
> inflammation. As there has been no evidence of recurrent abscess or
> fistula, no evidence of recurrent inflammation on colonoscopy or
> imaging studies, no evidence of a need for any medications for
> Crohn's disease other than his maintenance Remicade (for example,
> steroids), and no evidence for a need to escalate the dose of Remicade
> or narcotics, there is no evidence of a need for restrictions or
> limitations from Crohn's disease from October 16, 2013 onward.

*Id.*

Following Dr. Eisner's review of Plaintiff's Second-Level Appeal, Defendant again

upheld the original determination to terminate benefits beyond October 16, 2013.  ECF No. 16 at

PageID #: 952.

10

(4:15cv0354)

Plaintiff filed this action on February 24, 2015 seeking to overturn Defendant's decision denying his long-term disability benefits on grounds that the decision was arbitrary and capricious, and not supported by the evidence and administrative record in this matter.  ECF No.1.  Pursuant to the Court's June 18, 2015 Order, Defendant filed a copy of the administrative record in this matter on July 14, 2015 (ECF No.  13); Plaintiff filed the opening brief contemplated in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998) on September 21, 2015 (ECF No. 15); Defendant replied on October 30, 2015 (ECF No. 16).  The matter is ripe for adjudication.

## II.  Legal Standard

When an ERISA plan gives the plan administrator discretion in interpreting its terms or making benefits determinations, as the parties agree the Plan at issue does, a court reviews the administrator's decision under the deferential arbitrary and capricious standard of review. *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011); *Wilkins*, 150 F.3d at 613.  Under the arbitrary and capricious standard of review, the court must uphold the administrator's decision if the administrator's interpretation of the plan's provisions is "reasonable" or "rational."  *Price v. Bd. of Tr. of Ind. Laborer's Pension Fund*, 632 F.3d 288, 295 (6th Cir. 2011) (quoting *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009)); *Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 308 (6th Cir. 2010).  The court "review[s] not only the insurer's conclusion, but also its reasoning."  *Metro. Life Ins. Co. v. Conger*, 474 F.3d 258, 265 (6th Cir. 2007).

In reviewing the decision of the plan administrator, the Court may only consider the

11

(4:15cv0354)

evidence in the administrative record, as that is the evidence that the plan administrator

considered. *Wilkins*, 150 F.3d at 615. This standard of review does not require courts to "rubber

stamp[]" a plan administrator's decision, however. *Schwalm*, 626 F.3d at 308. "A court must

review the quantity and quality of the medical evidence on each side." *Id.* (quoting *Evans v.*

*UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006)). The decision must be upheld if it

results from "a deliberate principled reasoning process" and is supported by "substantial

evidence." *Id.* (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d

1140, 1144 (6th Cir. 1991)). Plaintiff bears the burden of proving the plan administrator's

decision was arbitrary and capricious. *Farhner*, 645 F.3d at 343.

### III.  Analysis

#### A.  Motion to Strike

A pertinent preliminary matter that must be resolved before the Court proceeds with

analysis of the parties' dispositive motions for judgment on the administrative record is

Defendant's Motion to Strike Plaintiff's Exhibit A Notice of Decision (ECF No. 15 at PageID #:

930-41) and related arguments in Plaintiff's Brief (ECF No. 15 at PageID #: 925-27). The

Motion to Strike is unopposed.

Under the arbitrary and capricious standard of review, "[i]n reviewing the decision of the

plan administrator, the Court may only consider the evidence in the administrative record, as that

is the evidence that the plan administrator considered." *Myers v. Mut. of Omaha Life Ins. Co.*,

No. 4:14CV2421, 2016 WL 1223278, at *4 (N.D. Ohio Mar. 29, 2016) (citing *Wilkins*, 150 F.3d

at 615). Furthermore, "[w]hen a claimant fails to submit evidence within the established

(4:15cv0354)

timeframe, the claimant is barred from supplementing the administrative record except in limited circumstances to support a procedural challenge." *Hawkins v. Cmty. Legal Aid Servs., Inc.*, No. 4:13-cv-00729-JRA, 2014 WL 3749412, at *10 (N.D. Ohio July 30, 2014) (citing *Wilkins*, 150 F.3d at 619 (J. Gilman, concurring) (noting the procedural challenge exception and explaining that by procedural challenges the Court envisions challenges "such as an alleged lack of due process afforded by the administrator or alleged bias on its part").

On November 10, 2014, Defendant's final second-level appeal decision was issued *via* letter to Plaintiff.  ECF 13 at Page ID#: 197-201 (A.R. 106-10).  Once Defendant's second-level appeal was decided, Plaintiff exhausted his administrative right to review, and the administrative record closed as to Plaintiff's long-term disability claim.  *Id.* at 200 (A.R. 109).  On November 14, 2014, four days later, the Social Security Administration ("SSA") issued notice of its decision awarding Plaintiff  disability benefits.  *See* ECF No. 15-1.  Because the SSA's notice was issued after Defendant's final second-level appeal decision, it was not a part of the evidence considered by the plan administrator at the time of its decision.  *See Hawkins*, 2014 WL 3749412, at *10 (citing cases) (finding the long-term disability administrative record closed after insurer's final decision on administrative appeal and striking SSA Documents created six months after the administrative record closed).  This is undisputed.

Plaintiff concedes the notice "is not a part of the administrative record."  ECF No. 15 at Page ID#: 917.  In Plaintiff's own words, SSA's notice was "submitted to show how a neutral body would analyze the very same set of facts" and to show "the unreasonableness, by comparison, of Defendant's approach."  *Id.*  Recognizing that these reasons are outside the realm

13

(4:15cv0354)

of procedural challenges envisioned in *Wilkins*, Plaintiff did not submit the notice in support of a

procedural challenge. *See Blajei v. Sedgwick Claims Mgmt. Servs., Inc.*, 721 F. Supp. 2d 584,

598-99 (E.D. Mich. 2010) (finding that SSA disability benefits award exhibit offered to show

that defendants erred in denying benefits is not procedural in nature, and striking the evidence as

"outside of the administrative record" that "may not be considered by a reviewing court").

The Court finds that the SSA Notice of Decision attached to Plaintiff's Brief as Exhibit

A (ECF No. 15 at PageID #: 930-41) is not part of the administrative record, and the parts of

Plaintiff's Brief  invoking SSA's notice (ECF No. 15 at PageID #: 925-27) to meet Plaintiff's

burden of proof under the arbitrary and capricious standard of review are not properly before the

Court.  Consequently, the Court finds that the Administrative Record before the Court, for the

purposes of judgment on the administrative record, includes only the administrative record filed

by Defendant on July 14, 2015 (ECF No. 13 at PageID #: 92-908 (A.R. 1-817)) pursuant to the

Court's Order (ECF No. 9 at PageID #: 54 ¶ 8).

For the reasons set forth above, Defendant's Motion to Strike Plaintiff's Exhibit A Notice

of Decision (ECF No. 15 at PageID #: 930-41) and related arguments in Plaintiff's Brief (ECF

No. 15 at PageID #: 925-27) is granted.

### B.  Defendant's Counterclaim for Overpayment

Defendant seeks an award of $25,531.30 for alleged overpayment of disability benefits.

ECF No. 11.  In its Motion for Judgment on the Administrative Record, Defendant argues that it

is "entitled to judgment on its Counterclaim because the Plan explicitly provides for repayment

of amounts paid due to erroneous or excess payments, including amounts received in Social

14

(4:15cv0354)

Security benefits." ECF No. 16 at PageID #: 957.  Defendant alleges that "[a]s a result of Plaintiff's receipt of Social Security Disability benefits, [Plaintiff] was overpaid long term disability benefits under the Plan in the amount of $25,531.30." ECF No. 11 at Page ID #: 68 ¶ 9.

Indeed, "[a] plan fiduciary is permitted to bring a claim for equitable relief to enforce the terms of the plan.  29 U.S.C. § 1132(a)(3)." *Hall v. Liberty Life Assur. Co. of Boston*, 595 F.3d 270, 274-75 (6th Cir. 2010).  There is no dispute that the award of Social Security Disability benefits is not part of the administrative record.  As Defendant intones, "Plaintiff admits in his brief, 'the SSA decision . . . occurred after the final LTD decision and is not a part of the administrative record.'" ECF 16 at Page ID#: 954.  Having successfully moved the Court to strike the only evidence of  Plaintiff's receipt or possession of Social Security Disability benefits, Defendant proffers no evidence to support its request for refund.  *Id.* ("the Social Security Administration decision is not properly before the Court, cannot be considered by this Court, and must be stricken."); *see, e.g.,  Arquilla-Romeo v. Metro. Life Ins. Co.*, 980 F. Supp. 2d 847, 853-54 (N.D. Ohio 2013) (finding defendant entitled to overpayment award where "Social Security Notice of Award" exhibit showed plaintiff received a lump sum check for retroactive benefits); *Kouns v. Hartford Life & Acc. Ins. Co.*, 780 F. Supp. 2d 578, 592 (N.D. Ohio 2011) (finding defendant entitled to overpayment award where administrative record reflected plaintiff's actual award information for a certain amount of retroactive Social Security benefits received per month).  Accordingly, the Court finds Defendant's request for a refund unsubstantiated by the record before the Court.  The request is, therefore denied.

15

(4:15cv0354)

### C. Parties' Cross-Motions

At the crux of this matter are the different conclusions drawn by the parties as to whether Plaintiff's Crohn's disease symptoms constituted a "qualifying disability" under the employer's long-term disability plan beyond October 16, 2013. There is no dispute that Plaintiff's Crohn's disease symptoms constituted a "qualifying disability" under the Parker Hannifin Long-Term Disability Program from August 22 , 2012 through October 16, 2013. *See* ECF No. 13 at PageID #: 535 (A.R. 444). Plaintiff contends that when Defendant terminated his benefits he was still being treated for and experiencing the same Crohn's disease symptoms that imposed "vocational limitations" and "ma[de] work impossible for him." ECF No. 15 at PageID #: 919 and ECF No. 18 at PageID #: 983. After conducting multiple reviews of Plaintiff's on-going clinical records and consultations with Plaintiff's treating physicians, Defendant found no objective evidence to substantiate Plaintiff's continued eligibility for benefits under the Plan and terminated Plaintiff's long-term disability benefits. ECF No. 16 at PageID #: 944-52.

Now, Plaintiff challenges Defendant's determination on the grounds that it was arbitrary and capricious. ECF No. 15. To meet his burden of proof under the arbitrary and capricious standard of review, Plaintiff makes arguments the Court addresses below.

### 1. Defendant's Use of Consulting Physicians

Plaintiff contends that Defendant's reliance on its consulting physicians' file reviews rather than conducting its own physical examination of Plaintiff supports reversal under the arbitrary and capricious standard. ECF No. 15 at PageID #: 921-23. To buttress this argument, Plaintiff relies on the proposition that a court may find the administrator's review arbitrary where

16

(4:15cv0354)

"the non-treating physician's conclusion makes a 'critical credibility determination [ ] regarding a claimant's medical history and symptomology' without observing the claimant." ECF No. 15 at PageID #: 923 (citing *Lanier v. Metro. Life Ins. Co.*, 692 F. Supp. 2d 775, 790 (E.D. Mich. 2010), *Houston v. Unum Life Ins. Co. of Am.*, 246 Fed. App'x 293, 301-02 (6th Cir. 2007), *Calvert v. Firstar Fin. Inc.*, 409 F.3d 286, 297 (6th Cir. 2005)).

> Especially where the plan administrator reserved a right to obtain an independent medical examination of the claimant but chose not to, relying instead on the opinion of a reviewing physician who, without personally meeting with the claimant, doubted the credibility of his complaints of pain, the administrator's decision to forego physical examination is a factor that weighs in favor of finding the decision to be arbitrary and capricious.

*Lanier*, 692 F. Supp. 2d at 790-91 (citing *Helfman v. GE Group Life Assur. Co.*, 573 F.3d 383, 395-96 (6th Cir. 2009)).

Central to the Court's consideration of this factor is whether the Plan "reserved a right" to conduct an independent medical exam.  Plaintiff does not argue nor direct the Court to a provision in the Plan stating Defendant "reserved a right" to conduct an independent medical examination.  The Court's review of the Administrative Record reveals that the Plan does not explicitly reserve the right to mandate a physical examination.  Rather, it provides as follows:

> While receiving LTD benefits, you have certain other responsibilities. You must: . . . Fully cooperate in the handling of your claim.  This includes, but is not limited to, *timely responding to the claims administrator's requests for physical exams* . . .[.]  If you fail to cooperate, your claim may be denied or your LTD Program disability income benefits discontinued.

ECF No. 13 at Page ID#: 124 (A.R. 33) (emphasis added). *Contra Calvert*, 409 F.3d at 295 (finding a reserved right where plan states "Liberty, at its own expense, will have the right and

17

(4:15cv0354)

opportunity to have a covered person whose injury or sickness is the basis of a claim examined

by a physician or vocational expert of its choice."); *Helfman*, 573 F.3d at 393 (finding a reserved

right where the plan"specifically reserved the right, at its own expense, 'to have any person,

whose Injury or Sickness is the basis of a claim . . . examined by a Physician, other health

professional or vocational expert of its choice.'").

Having distinguished the physical examination provisions of Plaintiff's employer's Plan

from the long-term disability plans in *Calvert* and *Helman*, the Court finds no basis to further

consider the *Lanier* and *Houston* factors[6] as Plaintiff suggests it should.  ECF No. 15 at PageID

#: 923 ("It is precisely this sc[e]nario where multiple consultants ignore the primary symptoms

and ignore their predecessor's mistakes but rubber stamp the opinion of workability that *Lanier*

and *Houston* were designed to address.").

## 2.  Dr. DeMario's Rebuttal Letter

Plaintiff contends that Defendant's review was arbitrary and capricious because it

excluded a letter sent to Defendant from Plaintiff's primary care physician Dr. De Mario on

August 18, 2014 (the "Rebuttal Letter") (ECF No. 13 at PageID #: 286-87 (A.R. 195-96)) during

Defendant's review of Plaintiff's First-Level Appeal.  ECF No. 15 at PageID #: 919-22.

"As a general rule, where a plan administrator 'chooses to rely upon the medical opinion

of one doctor over that of another . . . the plan administrator's decisions cannot be said to have

been arbitrary and capricious.'" *Lanier*, 692 F. Supp. 2d at 790-91 (quoting *McDonald v. W.-S.*

---

[6]  The Court does not address the first of three factors outlined in *Lanier* and *Houston* because Plaintiff does not allege that any of Defendant's reviewing physicians had a conflict of interest.

(4:15cv0354)

*Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003)). Nor is a plan administrator required to defer to

the opinion of a treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834

(2003). However, "[i]t is equally clear that a plan administrator may not disregard [a treating

physician's] opinions," and the plan administrator "must provide an explanation for resolving

conflicts between the treating physician and its own file reviewers." *Houston*, 246 F. App'x at

302 (citing *Black & Decker Disability Plan*, 538 U.S. at 834). "The obligation under ERISA to

review the administrative record in order to determine whether the plan administrator acted

arbitrarily and capriciously 'inherently includes some review of the quality and quantity of the

medical evidence and the opinions on both sides of the issues.'" *Lanier*, 692 F. Supp. 2d at 786

(citing *Evans*, 434 F.3d at 876). Defendant's eligibility determination was not arbitrary and

capricious if: (1) Defendant explained its resolution of any conflicts between the opinions of

Plaintiff's treating physicians and Defendant's consulting physicians' opinions; and (2) the

explanation was the result of a reasoned analysis that is supported by substantial evidence in the

administrative record.

Dr. Steven Tawil, an independent physician Board Certified in Internal Medicine with a

Subspecialty Certificate in Gastroenterology, was Defendant's consulting physician for Plaintiff's

First-Level Appeal. In this role, Dr. Tawil reviewed, among other things: Progress Notes from

Dr. DeMario with handwritten notes dated 4/12/2013-7/10/2013; Youngstown[,] Ohio Physician

Services Encounter Summaries from Dr. DeMario dated 9/11/2013-1/28/2014; and ValleyCare

Medical Group of Ohio letter from Dr. DeMario dated 3/17/2014. ECF No. 13 at PageID #: 304

(A.R. 213). Dr. Tawil also spoke with Dr. DeMario by telephone on July 9, 2014.

19

(4:15cv0354)

After speaking with Dr. DeMario, Dr. Tawil penned a letter to Dr. DeMario dated July 18, 2014 summarizing their telephone call. ECF No. 13 at PageID #: 309 (A.R. 218). The letter stated:

> During the phone discussion, we discussed with [sic] the fact that the patient has gained 70 pounds since 2012. There has not been any emergency room visits or hospitalizations. There has not been a need for steroids. There has not been a need to titrate upward the Remicade dosage. [Plaintiff] is being maintained on Remicade alone, without a need for any other medication. We discussed that the colonic biopsies in 2014 were normal, the MRI enterography in December 2013 was normal, CBC was normal, CRP was normal. After going over all the data, you concurred with this reviewer that there are no restrictions or limitations from performing work based on gastrointestinal illness from October 2013 and forward. [Plaintiff] does not appear to be physically challenged, and there are no obvious physical restrictions or limitations. He has a subjective report of pain for which he is on antidepressants, and narcotics. However there is no objective data of significant or advance Crohn's disease such that there would be restrictions or limitations from October 2013 and forward.

*Id.*

Dr. Tawil's letter asked Dr. DeMario to sign the document by July 31, 2014 to affirm that he "checked the content" for accuracy, and "make corrections or changes in the margins if needed." *Id.* The Administrative Record does not reflect that Dr. DeMario signed and returned the letter to Dr. Tawil with or without edits. *See* ECF No. 15 at PageID #: 922 (According to Plaintiff, "[Dr. DeMario] refused to sign off on Dr. Tawil's report."). Dr. Demario responded by sending a Rebuttal Letter to Defendant.

The Administrative Record reflects that on July 18, 2014—the same day Dr. Tawil penned his letter to Dr. DeMario—Dr. Tawil also submitted a Peer Review Report to Defendant. ECF No. 13 at PageID #304-09 (A.R. 213-18). Dr. Tawil's Peer Review Report included almost

20

(4:15cv0354)

verbatim information included in Dr. Tawil's letter to Dr. DeMario. *See* ECF No. 13 at PageID

#: 305, 307, 309 (A.R. 214, 216, 218). In particular, Dr. Tawil responded to Question No. 4 in

the Peer Review Report as follows:

> **4. Please contact treating physician to discuss level of impairment. Please indicate if you are in agreement with the AP's assessment. If no, please provide rationale**.
>
> Dr. Charles DeMario, and I discussed the case. We discussed the the fact that the patient has gained 70 pounds since 2012. There has not been any emergency room visits or hospitalizations. There has not been a need for steroids. There has not been a need to titrate upward the Remicade dosage. He is being maintained on Remicade alone, without a need for any other medication. We discussed that the colonic biopsies in 2014 were normal, the MRI enterography in December 2013 was normal, CBC was normal, CRP was normal. After going over all the data, the attending physician concurred with this reviewer that there are no restrictions or limitations from performing work based on gastrointestinal illness from October 2013 and forward. The patient does not appear to be physically challenged, and there are no obvious physical restrictions or limitations. He has a subjective report of pain for which he is on antidepressants, and narcotics. However there is no objective data of significant or advance Crohn's disease such that there would be restrictions or limitations from October 2013 and forward.

*Id.* at PageID #: 307 (A.R. 216).

On August 20, 2014, Defendant received Dr. DeMario's Rebuttal Letter dated August 18,

2014. *Id.* at PageID #: 286-87 (A.R. 195-96). This letter was issued a month after Defendant

received Dr. Tawil's Peer Review Report on July 18, 2014, and after Defendant decided

Plaintiff's First-Level Appeal on July 22, 2014. *See id.* at PageID #: 304-09 (A.R. 213-18),

298-302 (A.R. 207-12). In the Rebuttal Letter, Dr. DeMario states: "I wish to disagree with

some of the points in the letter from [Dr. Tawil], who consulted me regarding [Plaintiff] on July

21

(4:15cv0354)

18th, 2014." ECF No. 13 at PageID #: 286 (A.R. 195) (emphasis added).  The letter goes on to

explain the symptoms of Plaintiff's Crohn's disease as follows:

> [Plaintiff] has been suffering from Rectal Crohns disease with
> perianal fistulas.  To help control the severe rectal pain stents have
> been placed in the existing fistulas.  Frequent bowel movements
> irritate the area and the situation; this makes it very difficult for
> [Plaintiff] to sit and motions such as bending over and lifting result
> in severe pain. These symptoms are more or less constant but
> exacerbations of the symptoms occur a few times a week with more
> severe symptoms usually occurring about once a month.  [Plaintiff]
> routinely has bowel movements approximately 20-30 minutes, with
> the first bowel movement of the day he will have nausea and
> vomiting.

Id. at PageID #: 286 (A.R 195).

The Rebuttal Letter also addressed what Plaintiff characterized as Dr. Tawil's "gross

errors about weight gain when there was actual[] weight loss," (ECF No. 15 at PageID #: 921)

and certain other aspects of Plaintiff's treatment:

> It is documented in [Plaintiff's] chart that he has not gained 70
> pounds since 2012; his weights are as follows: 6/26/2011-250 lbs,
> 12/27/2012-249 lbs., 08/14/2013-245 lbs., 07/31/2014-235 lbs.
> These weights indicate a net loss of 15 pounds. Also I would like to
> address that [Plaintiff] has not needed any emergency room visits
> because his Remicade treatments have been relatively effective at
> preventing emergency exacerbations, which is a desired goal of
> treatment. The Cleveland Clinic Foundation does not generally give
> systemic steroids for his condition. [Plaintiff] is prescribed Zofran for
> bouts of nausea and oral narcotics for bouts of pain. With [Plaintiff's]
> condition explained more in depth; I hope you can understand my
> disagreement with Dr. Tawil's report.

ECF No. 13 at PageID #: 287 (A.R. 196).

On August, 29, 2014, Plaintiff again submitted Dr. DeMario's Rebuttal Letter to

Defendant as evidence for Plaintiff's Second-Level Appeal.  Id. at PageID #: 251-87 (A.R.

22

(4:15cv0354)

160-96).  Plaintiff alleges that Dr. Eisner—Defendant's consulting physician for Plaintiff's

Second-Level Appeal—"simply ratified [Dr. Tawil] minus the errors" because he "mistakenly

stated the Plaintiff's treating physician agreed with [Dr. Tawil]" and finalized his report after

unsuccessful attempts to contact Dr. DeMario when he had "ample time to get Dr. DeMario's

opinion."  *Se*e ECF No. 15 at Page ID #: 922.  As a consequence, Plaintiff alleges Defendant's

consulting physicians "nowhere resolve the issue that the symptoms are ongoing despite the

Crohn's disease being relatively stable."  *Id.*

Plaintiff misstates Defendant's burden when conflicts exist between the opinion of

Plaintiff's treating physician and Defendant's consulting physician.  Defendant need only

"provide an explanation for resolving conflicts between the treating physician and its own file

reviewers."  *Houston*, 246 F. App'x at 302 (citing *Black & Decker Disability Plan*, 538 U.S. at

834.  Defendant "may not disregard those opinions."  *Id.* (citing *Evans*, 434 F.3d at 876).  But,

Defendant need not to resolve the issue.

Plaintiff also mischaracterizes Defendant's response to Dr. DeMario's Rebuttal Letter,

and misrepresents the contents of Dr. Tawil's second Peer Review Report and Dr. Eisner's Case

Report.  On August 25, 2014, Defendant requested that Dr. Tawil complete an addendum review

in order to respond to the Rebuttal Letter.  ECF No. 13 at PageID #: 162 (A.R. 71).  On August

28, 2014, Dr. Tawil submitted a second Peer Review Report in which he confirmed that his

conclusions remained the same despite the Rebuttal Letter, and identified substantial evidence in

the Administrative Record, including Dr. DeMario's progress notes, to support his conclusion.

*Id.* at PageID #: 282-84 (A.R. 191-93).  In addition, Dr. Tawil addressed his errors regarding

(4:15cv0354)

Plaintiff's weight gain.  ECF No. 13 at PageID #: 162 (A.R. 71).

In response to Question No. 1, Dr. Tawil reported:

**1. Please review the review the reply provided by Dr. Charles DeMario and indicate if this changes your opinion in any way. Please explain why or why not.**

The reply provided by Dr. Charles DeMario does not change the opinion stated in the prior report in any way.  The weight comment will be adjusted, but the conclusions remain the same:[7]

. . . [T]he appeal letter claim of frequent bowel movements that make the claimant have difficulty sitting, bending, lifting, is not documented in any of the progress notes.  The description of 20 to 30 minutes of pain associated with nausea and vomiting after bowel movements, is never documented in any of the progress notes.  The stenting for perineal disease was performed in 2008.  There has been no requirement of needing further stent work, or surgery for October 2013 and forward.  As far back as 2012 the notes describe clinical stability with consideration to remove setons.  The most recent colonoscopy 1/31/14 showed no diagnostic abnormality.  There has been no hospitalizations, emergency room visit, or documented need for extensive antibiotics from fistula or perineal disease from October 2013 and forward.  The CBC and inflammatory markers are consistently normal.  MRI enterography was normal.

. . . The notes document a net weight GAIN of 24 pounds from 9/10/10 (211 pounds) to *new information* weight of 235 pounds on 7/31/14.  Hence, no weight loss has occurred despite claims of frequent incessant vomiting, but rather weight gain over the last 5 years.  Although the current appeal letter disagrees with these conclusions, on *7/9/14 at 10:20 AM the attending physician* concurred with this reviewer that there was no evidence of any restrictions or limitations from gastrointestinal illness.  In summary a patient with active perineal disease in 2008, no described unstable perineal disease for October 2013 and forward, has no evidence of

---

[7]  Redacted to excluded Dr. Tawil's review of Dr. DeMario's progress notes from 6/4/10, 7/16/10, 8/26/10, 5/25/11, 4/19/12, 8/15/12, 4/30/13, 11/6/13, 12/4/13, and 1/2/14 which pertain to Plaintiff's reported bowel complaints, health, and weight.

(4:15cv0354)

> active Crohn's disease from October 2013 and forward that would
> lead to any restrictions or limitations from gastrointestinal illness
> based on the clinical information which was reviewed, and
> re-reviewed in response to the appeal letter 8/18/14.

ECF No. 13 at PageID #: 282-84 (A.R. 191-93) (emphasis added).

On November 4, 2014, Dr. Eisner submitted a Case Report to Defendant after completing

his review for Plaintiff's Second-Level Appeal.  ECF No. 13 at PageID #: 203-09 (A.R. 112-18).

In his Case Report, Dr. Eisner reported:

> I called Dr. De[M]ario on 10/27/2014 at 15:30 EDT and left a
> voicemail with my contact information.  I called Dr. De[M]ario on
> 10/29/2014 at 11:30 EDT and left a message with Janet, including my
> contact information.  I received a phone call from Stephanie on
> 10/30/2014 at 12:25 EDT informing me that Dr. De[M]ario was
> returning my call.  I called on 10/30/2014 at 14:00 EDT and left a
> voicemail with my contact information.  I called on 10/31/2014 at
> 14:15 EDT and left a voicemail with my contact information.
> Contact with Dr. De[M]ario was not established.
> . . .
>
> RECOMMENDATION:
> . . .
>
> 5. I do not agree with the assessment of the claimant's capacity and
> restrictions as noted by the treating providers.
>
> 6. I agree with Dr. Tawil's assessment.
>
> RATIONALE:
> CBC and CRP lab tests have been normal, and a colonoscopy and
> EGD in January 2014 showed no evidence of active inflammation.
> As there has been no evidence of recurrent abscess or fistula, no
> evidence of recurrent inflammation on colonoscopy or imaging
> studies, no evidence of a need for any medications for Crohn's
> disease other than his maintenance Remicade (for example, steroids),
> and no evidence for a need to escalate the dose of Remicade or
> narcotics, there is no evidence of a need for restrictions or limitations
> from Crohn's disease from October 16, 2013 onward.

(4:15cv0354)

> According to Dr. Tawil's report, the claimant's personal attending physician gastroenterologist concurred with the opinion of this review during telephonic consultation of 7/9/2014.

*Id.* at PageID #: 207-08 (A.R. 116-17).

Based on the Court's review of the Administrative Record (ECF No. 13), the Court finds that Defendant's consulting physicians did not disregard the Dr. DeMario's Rebuttal Letter, and Defendant provided an explanation for resolving conflicts between the opinion of Dr. DeMario and the opinions of Drs. Tawil and Eisner. Defendant's explanation was the result of a reasoned analysis that is supported by substantial medical evidence in the Administrative Record. The Court also finds that Dr. Tawil addressed the error he made regarding Plaintiff's weight, and—even if Dr. DeMario later disagreed—Dr. Eisner accurately stated that Dr. Tawil reported Dr. DeMario's agreement with his conclusions during their telephonic consultation. Therefore, Plaintiff's reliance on Dr. DeMario's Rebuttal Letter to meet its burden of proof under the arbitrary and capricious standard fails.

### 3. The Anderson Vocational Report

Plaintiff argues that Defendant's analysis was not "reasoned" because Defendant did not address the only vocational analysis in the record (the "Vocational Report") (ECF No. 13 at PageID #: 503-11 (A.R. 412-20)) to ascertain whether Plaintiff could work full-time. ECF No. 15 at PageID #: 923-24. According to Plaintiff: "Vocational expert Marc Anderson explains in [the Vocational Report] that the sitting limitations, the 6-10 bowel movements per day, with accompanying pain and nausea, makes an employee unemployable." *Id.* at PageID #: 923. Plaintiff alleges, among other things, that the Vocational Report "warranted detailed review by

(4:15cv0354)

[Defendant]" and includes conclusions that are "unrefuted by [Defendant]" because Defendant "does not provide a consultant with any differing analysis." ECF No. 15 at PageID #: 923-24. Plaintiff also contends that: "A reasoned and principled analysis, as required by the Sixth Circuit, must identify the vocational abilities and limitations of an individual to ascertain whether they could work full time." *Id.* at PageID #: 924.

Plaintiff points the Court toward no legal precedent to support these propositions, however:

> Sixth Circuit precedent "suggests that it is entirely reasonable for an insurer to request objective evidence of a claimant's functional capacity." *Rose v. Hartford Fin. Servs. Group, Inc.*, 268 Fed. App'x. 444, 453-54 (6th Cir. 2008) (unpublished) (collecting cases). A formal functional capacity assessment, however, is not the only objective proof of a claimant's limitations. A qualified physician can correlate clinical findings with the results of objective medical testing to render an opinion on the ability of an individual to perform certain tasks.

*Lanier*, 692 F. Supp. 2d at 788.

According to Plaintiff, Marc Anderson is "a professional whose expertise in vocational issues and potential limitations from a disability are widely acknowledged," and an expert "who has testified before the [SSA] and is frequently called upon to give expert vocational opinions of workability." ECF No. 15 at PageID #: 921. Under Sixth Circuit precedent Defendant did not have to rely on the Vocational Report alone to make its determination. All three of Defendant's consulting physicians—Drs. Green, Tawil, and Eisner—were qualified physicians who correlated clinical findings with the results of objective medical testing to render an opinion on the ability of Plaintiff to perform the duties of his job. Nevertheless, the report was considered.

27

(4:15cv0354)

The Vocational Report was submitted as evidence in support of Plaintiff's First-Level

Appeal on April 9, 2014. Both Drs. Tawil and Eisner identified the Vocational Report in the list

of data they reviewed. *See* ECF No. 13 at PageID #: 304 (A.R. 213) (listing in Dr. Tawil's Peer

Review Report "Vocational Assessment and Counseling Services, Inc. Vocational Assessment

report from M. Anderson, MS dated 3/9/2014"); ECF No. 13 at PageID #: 205 (A.R. 114) (listing

in Dr. Eisner's Case Report "03/09/14 Vocational Assessment of Residual Employability, Mark

A. Anderson, MS, CDMS, LPC, Vocational Assessment and Counseling Services, Inc.").

Defendant referred Plaintiff's claim to all three consulting physicians in order to

"determine Plaintiff's level of functionality." *See id.* at PageID #: 536 (A.R. 445). Dr. Green

addressed Plaintiff's vocational restrictions in his October 3, 2013 Memorandum:

> There is inadequate medical evidence to support impairment. There
> is self-reported diarrhea with several bowel movements daily. *The
> claimant requires access to a bathroom in reasonable proximity. If
> he is still using opiate analgesics, he should not operate heavy
> machinery or equipment with the potential risk of significant trauma.
> While on Remicade, he should not be exposed to hazardous infectious
> material in the workplace or be exposed to coccidiomycosis or
> histoplasmosis in regions endemic for these fungal diseases.* Crohn's
> disease is a chronic condition subject to periods of exacerbation and
> remission. Impairment can change during periods of disease activity.
>
> At this time, there is no documentation of ongoing disease causing
> impairment and there has been noncompliance with treatment by the
> claimant. If there is a severe, uncontrolled chronic pain issue, it would
> be expected that the claimant would seek medical intervention.

*Id.* at PageID #: 543 (A.R. 452) (emphasis added).

For Plaintiff's First-Level Appeal, Dr. Tawil—an independent physician Board Certified

in Internal Medicine with a Subspecialty Certificate in Gastroenterology—addressed Plaintiff's

(4:15cv0354)

vocational restrictions in his July 18, 2014 Peer Review Report:

> After going over all the data, . . . *there are no restrictions or limitations from performing work based on gastrointestinal illness from October 2013 and forward. The patient does not appear to be physically challenged, and there are no obvious physical restrictions or limitations.* He has a subjective report of pain for which he is on antidepressants, and narcotics. *However there is no objective data of significant or advanced Crohn's disease such that there would be restrictions or limitations from October 2013 and forward.*

ECF No. 13 at PageID #: 305, 307 (A.R. 214, 216) (emphasis added).

Lastly, for Plaintiff's Second-Level Appeal, Dr. Eisner— an independent physician Board Certified in Internal Medicine with additional certification in Gastroenterology who was not previously involved with Plaintiff's claim—addressed Plaintiff's vocational restrictions in his July 18, 2014 Case Report:

> As of October 16, 2013, there was *no objective evidence of any functional impairment that resulted in restrictions or limitations.* Although Plaintiff had a prior perirectal fistula and was treated with Seton placement in the past, since October 2013, there was no requirement for (or evidence of) antibiotics, surgery, emergency room visits, or hospitalizations. CBC and CRP lab tests have been normal, and a colonoscopy and EGD in January 2014 showed no evidence of active inflammation. As there has been no evidence of recurrent abscess or fistula, no evidence of recurrent inflammation on colonoscopy or imaging studies, no evidence of a need for any medications for Crohn's disease other than his maintenance Remicade (for example, steroids), and no evidence for a need to escalate the dose of Remicade or narcotics, *there is no evidence of a need for restrictions or limitations from Crohn's disease from October 16, 2013 onward.*

*Id.* at PageID #: 208 (A.R. 117) (emphasis added).

Therefore, the Court finds that: (1) the Administrative Record reflects that the Vocational

(4:15cv0354)

Report was not overlooked; and (2) Plaintiff's argument that Defendant did not address the only

vocational analysis in the record to ascertain whether Plaintiff could work full-time does not

meet the burden of proving that Defendant's analysis was not a "reasoned analysis." There was

substantial evidence in Plaintiff's medical records to inform a reasoned analysis and Defendant

drew its conclusion as to vocational limitations and restrictions from the evidence in the

Administrative Record.

### 4. Plaintiff's Remaining Arguments

In his penultimate and ultimate arguments, Plaintiff contends that Defendant's analysis

was not "reasoned" because Defendant offered inconsistent rationale for its decisions, and

because the SSA's notice reached a different conclusion. The Court resolved the matter

regarding the SSA notice earlier. No more will be written about it, as it is not properly before the

Court. Regarding the "inconsistent rationale," the Court finds that Plaintiff continued to

supplement his medical records with new medical information at each level of appeal. It would,

therefore, stand to reason that Defendant's basis for terminating Plaintiff's long-term disability

benefits evolved over time with the addition of new medical information and further review.

Nonetheless, the Court finds that Defendant's rationale was consistent throughout.

Plaintiff received long-term disability benefits under the Parker Hannifin Long-Term

Disability Program from August 22, 2012 through October 16, 2013. Plaintiff was responsible

for, among other things: (1) submitting "current medical documentation the claims administrator

determines conclusively demonstrates [the employee's] inability to perform the essential

functions of [the employee's] occupation;" and (2) providing "periodic proof of [the

(4:15cv0354)

employee's] continued disability when the claims administrator requests it." ECF No. 13 at PageID #: 124 (A.R. 33). Defendant's analysis reasonably relied upon the medical records and related documentation submitted by Plaintiff including office visit notes, diagnostic test results, procedure reports, and related documentation from and consultation with Dr. DeMario, Dr. Shen, and nurse practitioner Wainwright. Three separate and independent consulting physicians Board Certified in Internal Medicine and Gastroenterology reviewed Plaintiff's file throughout the claims and appeals process. Each reviewer determined that there were no physical exam findings, diagnostic test results, or other forms of objective medical evidence supporting restrictions or limitations that would prevent Plaintiff from performing the duties of his job. Because Plaintiff's medical records and related documentation failed to support a finding that Plaintiff was still unable to perform the material duties of his job beyond October 16, 2013, the Defendant terminated Plaintiff's long-term disability benefits. "In the absence of any definite anatomic explanation of plaintiff's symptoms, [the Court] cannot find that the [Plan] administrator's decision to deny benefits was arbitrary and capricious." *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 382 (6th Cir. 1996) ("subjective complaints are easy to make, but almost impossible to refute").

## IV. Conclusion

The Court finds Defendant's decision to terminate Plaintiff's long-term disability benefits was the result of a deliberate, principled, reasoning process that is supported by substantial evidence in the Administrative Record. For the reasons above, Plaintiff's motion for judgment on the administrative record is denied; Defendant's motion for judgment on the

(4:15cv0354)

administrative record is granted; and Defendant's motion to strike is granted.  Defendant's

request for a refund of $25,531.30 is denied.


      IT IS SO ORDERED.


  September 30, 2016                            */s/ Benita Y. Pearson*
Date                                           Benita Y. Pearson
                                           United States District Judge